FILED
2020 Mar-24 PM 03:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |  | |
|---|---|---|---|
| NORMAN PATRICK HODGSON, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs. | ) | 5:18-cv-02088-LSC | |
| | ) | | |
| ANDREW SAUL, | ) | | |
| Commissioner of | ) | | |
| Social Security, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM OF OPINION**

**I.  Introduction**

The magistrate judge to whom this Social Security appeal was previously assigned has entered a Report & Recommendation recommending reversal of the Commissioner of Social Security's denial of benefits and remand to consider the evidence of Plaintiff's lumbar spine, right heel spur, and Achilles tendinopathy. (Doc. 16.) The Commissioner filed an objection to the Report & Recommendation within the time allotted by the magistrate judge. (Doc. 17.) This case was then reassigned to the undersigned pursuant to the Court's General Order for Referral of Civil Matters to Magistrate Judges. (Docs. 19 & 20.)

After now having thoroughly reviewed the entire administrative record and having the benefit of the parties' original briefs, this Court finds that the magistrate judge's Report & Recommendation is not due to be adopted and accepted. Rather, for the following reasons, the decision of the Commissioner is due to be affirmed.

## II.     Background

The plaintiff, Norman Patrick Hodgson, appeals from the decision of the Commissioner denying his application for Disability Insurance Benefits ("DIB"). Hodgson timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Hodgson was 48 years old on his alleged disability onset date, and 49 years old on December 31, 2013, his date of last insured ("DLI"). (Tr. at 7, 12, 15, 177.) Hodgson has a limited education and past work experience as a trailer truck driver. (Tr. at 15, 102, 200.) Hodgson claims that he became disabled on March 31, 2013, due to back, shoulder, elbow, and wrist problems, arthritis, and bipolar disorder. (Tr. at 199.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*,

245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id*. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416. 909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

*See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment, or combination of impairments, does not meet a medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id*. §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id*.

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.; see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first determined that Hodgson has not engaged in SGA since March 31, 2013, his alleged onset date, through his date last insured of December 31, 2013. (Tr. at 12.) According to the ALJ, Plaintiff's status post 2011 cervical fusion and obesity are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither met nor medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 13.) The ALJ did not find Hodgson's allegations to be totally credible, and he determined that Hodgson has the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except that he is limited to occasionally climbing stairs and ramps, but never climbing ladders or ropes. The claimant should avoid exposure to hazardous environments including, but not limited to, unprotected heights and unguarded machinery. The claimant is also limited to occasional overhead reaching, and frequent, but not constant forward reaching, handling, and fingering.

(Tr. at 13.)

According to the ALJ, Plaintiff was unable to perform any past relevant work, he is a "younger individual age 18-49," he has "a limited education," and he "is able to communicate in English," as those terms are defined by the regulations. (Tr. at 15.) The ALJ determined that transferability of job skills is not an issue because using the Medical-Vocational Rules as a framework supports a finding that Hodgson

5

is "not disabled," whether or not Hodgson has transferable job skills. (*Id.*) Moreover, the ALJ enlisted a vocational expert ("VE") and used the Medical-Vocational Rules to find that through the DLI, considering Hodgson's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Hodgson could have performed, such as counter clerk, garment sorter, and ticket marker. (Tr. at 15-16.) The ALJ concluded his findings by stating that Plaintiff has not been "under a disability, as defined in the Social Security Act, at any time from March 31, 2013, the alleged onset date, through December 31, 2013, the date last insured." (Tr. at 17.)

### III. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

**IV. Discussion**

Hodgson contends that the ALJ's decision should be reversed and remanded for one reason: the ALJ erred in his RFC assessment as it is unsupported by substantial evidence.

A claimant bears the burden of proving he was disabled within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(i); 20 C.F.R. § 416.912(a), (c); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ considered Plaintiff's disability claim using the five-step sequential evaluation process. To determine if Plaintiff could perform his past relevant work at step four or other work at step five, the ALJ had to first assess Plaintiff's RFC. An individual's RFC represents the most he can still do, despite his limitations, in a work setting. 20 C.F.R. § 404.1545(a)(1). In order to determine an individual's RFC, the ALJ assesses all of the relevant evidence in the record, including medical reports prepared by a physician or other healthcare provider, as well as more subjective descriptions and observations of an individual's limitations. *Id.* § 404.1545(a)(3). Moreover, the evaluator considers not only the impairments classified as "severe" but the "limiting effects" of all conditions when making a judgment about an individual's RFC. *Id.* § 404.1545(e). A reviewing court will affirm the ALJ's RFC assessment if it is supported by the objective medical evidence. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Hodgson raises two arguments with respect to his RFC assessment. First, he argues that the ALJ failed to provide any analysis regarding the degeneration of his lumbar spine. Second, he argues that the ALJ failed to provide any analysis regarding his right heel spur and Achilles tendinopathy.

### A. Diagnosis of Degeneration of Lumbar Spine

Substantial evidence supports the ALJ's determination as to Hodgson's RFC. Hodgson argues that the ALJ did not consider a diagnosis of degeneration in his lumbar spine in his RFC determination, but a diagnosis does not establish limitations. *See Moore,* 405 F.3d at 1213; *see also Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) (finding that "[d]isability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself"). Moreover, Hodgson points to two letters from May 2011 written by Dr. Morris Seymour, Hodgson's treating physician, which predate Hodgson's alleged onset date by two years. (Tr. at 14, 316-20.)

After an examination of Hodgson's lumbar spine, Dr. Seymour stated in his May 20, 2011, letter that Hodgson's gait is grossly normal; his spine is without signs of scars, trauma, masses, unusual hair or pigment; no lymphadenopathy is noted; no deformity is noted of the shoulders, pelvis, knees, ankles, and feet; there is no evidence of lumbar or thoracic scoliosis; and no tenderness is noted of the spinous

processes. (Tr. at 319.) Then, Dr. Seymour stated in a May 24, 2011, letter that Hodgson's MRI showed "significant degenerative changes" in his lumbar spine. (Tr. at 316.) However, Dr. Seymour does not note any functional limitations regarding the diagnosis of degeneration in the lumbar spine or any other limitations in connection to Hodgson's alleged back impairments. (Tr. at 316-20.) Notably, Dr. Seymour stated that in May 2011 it was the first time he had seen Hodgson in nine years and pointed out that Hodgson continued to work as a truck driver even while alleging his disabling lower back pain. (Tr. at 318.) These letters fail to establish limitations greater than the ALJ's RFC determination. (Tr. at 14.)

Rather, the ALJ focused his findings on Hodgson's alleged symptoms based on treatment records from the relevant period in 2013. (Tr. at 14.) The ALJ found that the examinations and medical records do not provide objective medical evidence to support Hodgson's subjective complaints regarding his back pain. (Tr. at 14.) Specifically, the ALJ noted that the examinations were unremarkable and generally normal during the relevant period. (Tr. at 14, 269-70.) The ALJ discussed Hodgson's cervical fusion surgery and neck pain because Dr. Seymour noted that those were Hodgson's most severe symptoms. (Tr. at 14, 316.) Thus, the ALJ determined that the 2013 medical records were inconsistent with Hodgson's

testimony about the intensity, persistence, and limiting effects of his symptoms. (Tr. at 14, 88-104, 269-70.)

### B. Diagnosis of Right Heel Spur and Achilles Tendinopathy

Hodgson argues that the ALJ failed to consider his right heel spur and Achilles tendinopathy in determining his RFC. In August 2011, approximately a year and a half prior to the relevant period, Plaintiff again visited Dr. Seymour complaining of right foot pain. (Tr. at 321). Dr. Seymour noted Plaintiff's report that his pain was a "4 out of 10" but that it was exacerbated by "walking, shoe gear, and heavy activities." (*Id.*) Dr. Seymour noted a diagnosis of mild Achilles tendon contracture with a posterior heel spur and Achilles tendinopathy. Dr. Seymour advised him to use ice every hour for 10 minutes to treat the pain. However, the ALJ did not find Plaintiff capable of heavy work, instead finding his RFC was limited to a reduced range of light work. Further, Plaintiff cites no additional treatment note, from any other medical provider, indicating Plaintiff had this additional limitation or was unable to work for any consecutive twelve-month period, during the relevant period, as required to meet the definition of disability under the Social Security Act. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 404.1509. Instead, the record indicates Plaintiff continued to work through this allegedly disabling limitation, testifying he had his Achilles' issue when he was driving. (Tr. at 96).

Hodgson saw Dr. Matthew DeOrio in September 2011, in connection with his right heel pain. (Tr. at 323.) Dr. DeOrio diagnosed Hodgson with chronic calcific insertional Achilles tendinopathy. (*Id*.) Dr. DeOrio noted Plaintiff's reports of "5/10" right heel pain, aggravated by walking. (Tr. at 323). Dr. DeOrio also noted that a rocker bottom shoe "helps," though Plaintiff's pain continued. (*Id.*) Plaintiff stresses that Dr. Orio said that "if icing, a rocker bottom shoe, anti-inflammatories, and a ¼-inch elevation in his heel did not relieve the pain, then the only other treatment would be significant surgery requiring a cast and boot for 8-10 weeks." (Tr. at 323-24). However, Dr. DeOrio actually noted that "[i]f and when this bothers him enough," the surgery would be scheduled. (Tr. at 323). There is no indication Plaintiff's pain continued to the point that Dr. DeOrio, or any other medical provider, actually ordered the surgery. In addition, Plaintiff does not cite any additional treatment notes for his right heel pain and does not establish that, even if he needed surgery on his right heel, that he would be disabled for any 12-month period, as the outpatient surgery would only place him in a cast and boot for 8-10 weeks. (Tr. at 323-24).

Therefore, Hodgson has failed to demonstrate any further functional limitations as a result of the treatment notes of either Dr. Seymour or Dr. DeOrio, concerning his right heel spur or Achilles tendinopathy. These records do not

provide objective medical evidence that Hodgson had additional limitations or was unable to work for any consecutive twelve-month period, during the relevant period, as required to meet the definition of disability under the Social Security Act. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 404.1509.

**V.    Conclusion**

Upon review of the administrative record, and considering all of Hodgson's arguments, the Court finds that the magistrate judge's Report & Recommendation (doc. 16) is not due to be adopted and accepted. Rather, the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on March 24, 2020.

L. Scott Coogler
United States District Judge

201416